# SEALED ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | |
| ROBERT HAGUE-ROGERS, *et al.*, | § | *EX PARTE* and Under Seal |
| | § | |
| Defendants. | § | **3-11CV0792-L** |

## *EX PARTE* COMPLAINT OF THE UNITED STATES OF AMERICA FOR RESTRAINING ORDER, INJUNCTIVE RELIEF, AND APPOINTMENT OF TEMPORARY RECEIVER

1.      The United States of America (United States) files this *ex parte* Complaint against Robert Hague-Rogers and companies which he either owns or exercises management and operational control over, including: HR Financial Services, Inc. (HR Financial); HR Sales and Marketing (HR Sales); Private Structure Consultants, Inc. (PSC); and Total Administration Corporation, Inc. (TACI) (collectively "Hague-Rogers"), and represents as follows.

## INTRODUCTION

2.      This civil action is brought by the United States for a restraining order, preliminary injunction, and other equitable relief to which it is entitled under the Fraud Injunction Statute, 18 U.S.C. § 1345, to enjoin the alienation and disposition of property or assets controlled by and/or belonging to Hague-Rogers, and/or obtained during his

*Ex Parte* **Complaint of the United States of America for Restraining Order,
Injunctive Relief, and Appointment of Temporary Receiver - Page 1**

commission of criminal offenses.  The United States also seeks to prohibit any person from withdrawing, transferring, removing, dissipating or disposing of such property, or property of equivalent value.  Included with this complaint and in support of its requested relief is the affidavit of Senior Investigator Michael Bennett of the United States Department of Labor – Employee Benefits Security Administration (DOL). *See* Pl.'s Appendix (App.) ¶¶ 1-12.

       3.     On or about March 11, 2011, Hague-Rogers entered into a plea agreement and factual resume with the United States and pleaded guilty to count four of an indictment, charging him with a violation of 18 U.S.C. § 371 (18 U.S.C. § 664), Conspiracy to Commit Theft or Embezzlement from an Employee Benefit Plan.  App. ¶ 5. The United States contends that Hague-Rogers embezzled, stole and/or converted to his own use funds, property, and other assets belonging to Total Welfare Benefit Fund (TWBF), an ERISA employee benefit plan.  *Id.*  Hague-Rogers is scheduled to be rearraigned and plead guilty on April 21, 2011.  *Id.*  During the course of determining the loss in that criminal case, the investigators determined that Hague-Rogers was currently engaged in conduct that was tantamount to an elaborate Ponzi scheme.  *Id.* at ¶¶ 6-8.  The United States believes Hague-Rogers was directing the transfer of assets held on behalf of private "investors" and single employer trusts (SETs) to pay personal expenses on behalf of himself and family, as well as using funds from each category to repay amounts previously taken from other investors and SETs.  *Id.*  Such conduct would constitute additional uncharged criminal fraudulent conduct, including federal health care offenses

and wire fraud.  *Id.*  The United States believes that as of late January 2011, assets belonging to SETS and investors still exist, but will continue to be used to facilitate the Ponzi scheme.  App. ¶ 10.  Moreover, while on pre-trial release, Hague-Rogers continues to travel domestically, likely recruiting new investors and SETs that could be future victims of the fraud scheme.  App. ¶¶ 9-11.

4.      The United States therefore files this complaint seeking to have all assets belonging to Hague-Rogers, held by him for the benefit of others, as well as any property of equivalent value, frozen and retained by the agencies and/or financial institutions in which they are located.  The United States further requests that the Court order all such property remain frozen until resolution of this matter or any other proceeding related to this matter.  The United States further requests the appointment of a temporary receiver to be paid from such assets in order to protect assets belonging to SETs and investors, effectuate the orderly payment of legitimate SET claims, and the winding down of his various businesses.

<u>RELATED CASE</u>

5.      This civil action is related to criminal case number 3:11-cr-0038-L against Hague-Rogers, currently pending in the Northern District of Texas before the Honorable Sam A. Lindsay.  App. ¶ 3.

## PARTIES, JURISDICTION, AND VENUE

6.    Plaintiff is the United States of America.

7.    Defendants reside and transact business within the Northern District of Texas, Dallas Division.  App. ¶ 4.

8.    This Court has jurisdiction of the subject matter of this civil action pursuant to 18 U.S.C. § 1345 and 28 U.S.C. §§ 1331 and 1345.

9.    Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391.

## HAGUE-ROGERS'S SCHEMES TO DEFRAUD

10.    TWBF was created in 1998 and is a Voluntary Employee Benefit Association (VEBA).  App. ¶ 4.  A VEBA under the Internal Revenue Code 501© is organized to pay life, sick, accident, and similar benefits to members or their dependents, or designated beneficiaries if no part of the net earnings of the association benefits any private shareholder or individual.  *Id.*  TWBF entered into a collective bargaining agreement between Associated Business Contract Group (ABCG) and the International Union of Industrial Independent Workers Local 11 (Union).  *Id.*  Trustees for both ABCG and the Union were appointed to oversee TWBF.  *Id.*  TACI was appointed the plan administrator for TWBF in 1998.  *Id.*  In March 2003, the IRS issued Notice 2003-24, advising Hague-Rogers that the structure of TWBF disqualified it from tax-exempt status.  *Id.*  After Hague-Rogers was provided with that notice, he directed and otherwise caused

the transfer of funds from TWBF to be used for expenses not for the benefit of TWBF. *Id.*

11.     On March 11, 2011, Robert Hague-Rogers entered into a plea agreement and factual resume with the United States.  Those documents lay the predicate for his guilty plea to count four of a February 23, 2011, indictment charging him with a violation of 18 U.S.C. § 371 (18 U.S.C. § 664) and conspiracy to commit wire fraud.  The wire fraud charges against Hague-Rogers are also supported by Hague-Rogers's admissions. Specifically, Hague-Rogers admits that beginning in November 2004 and through at least July 2006, Hague-Rogers conspired to commit theft or embezzlement of funds belonging to TWBF.  *Id.*  During the course of the conspiracy, Robert Hague-Rogers personally committed or caused the staff or employees of HR Financial and HR Sales and others to conduct money transfers and cash withdrawals from and between Hague-Rogers and TWBF for his and his family's personal benefit.  *Id.*  Robert Hague-Rogers also prepared or directed the preparation of TACI documents purportedly legitimizing the transfers of such funds from TWBF through TACI to HR Financial and HR Sales.  *Id.*  The admitted conduct constitutes wire fraud in violation of 18 U.S.C. § 1343.  *Id.*  Regardless, Hague-Rogers's activities are fraud within the meaning of section 1345 and totaled at least $500,000.00.  App. ¶ 5.  The United States is therefore authorized to seek relief against Hague-Rogers pursuant to 18 U.S.C. § 1345(a)(1).

12.     During the course of investigating the full scope of Hague-Rogers'

fraudulent conduct, specifically to determine the full intended loss in the criminal case,

the United States reviewed documents and conducted multiple interviews.  App. ¶ 6.

Based on its review and analysis, the United States learned that Robert Hague-Rogers and

others - without the knowledge and/or consent of SET employers - caused unauthorized

loans against SET whole-life insurance policies.  *Id.*  Robert Hague-Rogers, by and

through TACI, PSC, HR Financial, and HR Sales used the proceeds to financially support

a Ponzi scheme, from which he and his immediate family obtained personal property and

benefits, all to the detriment of SETs and some investors.  *Id.*  The United States learned

from the investigation that funds were deposited into SETs by employers (i.e., employer

A, employer B, employer C, etc.) for the purpose of providing certain health care

program-related benefits.  App. ¶ 7.  Funds, in the form of unapproved loans, were

removed from any given SET through wire transfers and deposits to TACI, and then to

various bank accounts in the name of Hague-Rogers.  *Id.*  Funds from investors also were

transferred from any given investor through wire transfers and deposits into HR

Financial, then to TACI or some other company, and ultimately to various bank accounts

held in the name of Hague-Rogers.  *Id.*  This process also was used - without permission

or knowledge of the SETs - to replace assets or property that had been fraudulently

removed from such SETs and/or investors.  *Id.*  In either case, funds were used to

reimburse SETs, make high-interest payments to investors, and pay personal and business expenses of Robert Hague-Rogers and his family. *Id.*

13.     For example, on June 29, 2006, Hague-Rogers fraudulently transferred $380,000.00 from SET "A," through TACI, to SET "B." The same day, Robert Hague-Rogers fraudulently transferred $40,000.00 from SET "A," through TACI, $16,750.00 of which was deposited into HR Financial, and $23,250.00 of which deposited into HR Sales. Such transfers continue into 2011. All such funds were used for Robert Hague-Rogers' personal and business items and interests. The United States could not identify or locate any legitimate income from Hague-Rogers and his companies except possibly nominal annual administrative fees of $2500.00 from each SET. *Id.* Simply put, the foregoing conduct clearly constitutes Federal health care offenses, as well as other criminal fraud within the meaning of 18 U.S.C. § 1345(a)(1). As a result, not only may the United States seek to enjoin Hague-Rogers' current conduct, but it may also restrain property traceable to the current scheme, as well as property of equivalent value to any past or ongoing predicate fraud offense. The United States further believes should Hague-Rogers' conduct be unchecked, he will continue to dissipate assets and property obtained from past and future victims. App. ¶¶ 11-12. The United States believes that Hague-Rogers's fraud totals millions. *Id.* ¶¶ 5, 8.

<u>BRIEF IN SUPPORT OF REQUESTED RELIEF</u>

*Criminal predicate offenses*

14.     A grand jury in the Northern District of Texas indicted Hague-Rogers on February 23, 2011, in a six count indictment, charging him with violations of 18 U.S.C. § 1349, Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1343; Wire Fraud, 18 U.S.C. § 371, Conspiracy to Embezzle from an Employee Benefit Plan; and 18 U.S.C. § 664, Embezzlement from an Employee Benefit Plan.  The Indictment also contained a notice of forfeiture.  The criminal case No. 3:11-cr-038 is pending before United States District Judge Sam A. Lindsay.  Hague-Rogers entered into a plea agreement with the government and has executed a factual resume in connection with the plea agreement.  However, he has not entered his plea of guilty.  His re-arraignment is currently scheduled before U.S. Magistrate Judge Irma C. Ramirez on April 21, 2011 at 9:00 a.m.  Nonetheless, those plea documents lay the predicate for his guilty plea to count four of the indictment, charging him with  violation of 18 U.S.C.§ 371, based on the conduct described above.  App. ¶ 5. The United States is therefore authorized to seek injunctive relief against Hague-Rogers pursuant to 18 U.S.C. § 1345(a)(1).

15.     A Ponzi scheme is defined as a:

fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments.  Money from the new investors is used directly to repay or pay interest to earlier investors, usually without any operation or revenue-producing activity other than the continual raising of new funds.

*United States v. Ritchie Special Credit Investments, Ltd.*, 620 F.3d 824, 827 (8th Cir.

2010) (citing Black's Law Dictionary). This is exactly what Hague-Rogers has done, and

continues to do with funds belonging to SETs and investors. App. at ¶¶ 6-8. From 2001

and through April 2011, as described above, Hague-Rogers has engaged, and continues to

engage, in an elaborate Ponzi scheme by wiring funds belonging to SETs and investors -

without their knowledge - to pay off other debts and interest. *Id.* Because the SETs being

defrauded include health care benefit programs, not only is Hague-Rogers committing

wire fraud, but also Federal health care offenses within the meaning of 18 U.S.C. § 24.

*Id.* The United States is thus authorized to seek relief against Hague-Rogers pursuant to

18 U.S.C. § 1345(a)(1) for this additional fraudulent conduct. *Id.*

16.     After Hague-Rogers is enjoined from conducting any business related to the

SETs or his so-called investments, the United States believes he or persons on his behalf

will withdraw, transfer or otherwise dispose of all such assets without paying restitution,

forfeiture, or fines in his criminal case, or other restitution to any victims in the ongoing

fraud scheme, unless assets within the SETS, as well as property of equivalent value are

restrained. App. ¶¶ 9-11. Accordingly, the United States seeks to (a) enjoin Hague-

Rogers and his companies from alienating or dissipating property or assets obtained by

any criminal activity; (b) obtain a restraining order prohibiting Hague-Rogers, and/or any

other person or entity from withdrawing, transferring, removing, dissipating, or disposing

of assets seized from  bank accounts, or property of equivalent value, until the conclusion

of this case or any other proceeding related to this action; and © appoint a temporary

receiver to manage any such assets, adjudicate legitimate SET claims, and wind down any business operations.

*The Fraud Injunction Statute*

17.    "Section 1345 is a powerful weapon in the government's anti-fraud arsenal." *See, e.g., United States v. Payment Processing Ctr., LLC*, 435 F. Supp.2d 462, 464 (E.D. Pa. 2006).  Section 1345 was originally enacted in 1984 as part of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, 21452 (1984).  The statute was enacted "to allow the Attorney General to put a speedy end to a fraud scheme by seeking an injunction in federal court as soon as the requisite evidence is secured." *United States v. Am. Heart Research Found., Inc.*, 996 F.2d 7, 11 (1st Cir. 1993).  Congress further determined that "[e]xperience has shown that even after indictment or the obtaining of a conviction, the perpetrators of fraudulent schemes continue to victimize the public." S. Rep. Mo. 98-225, 98th Cong., 1st Sess. (1983); *see also* S. Rep. N. No. 225, 98th Cong., 2d Sess. 401-02, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3539-40.  Such statements clearly show that Congress intended to enhance the government's ability to enjoin the dissipation of property wrongfully obtained through fraud. *See e.g., United States v. DBB, Inc.*, 180 F.3d 1277, 1285 (11th Cir. 1999); *see also Payment Processing Ctr., LLC*, 435 F. Supp.2d at 466 ("[i]t defies logic to suggest Congress sought to halt ongoing criminal activity, but simultaneously opted to leave victim funds unprotected during a lengthy criminal investigation or ongoing civil suit.").

18.     Property frozen pursuant to section 1345 was historically required to be

traceable to the allegedly illegal activity.  *See, e.g., United States v. Brown*, 988 F.2d 658,

663 (6th Cir. 1993).  Congress subsequently amended the fraud injunction statute to

permit courts to freeze property obtained as a result of a Federal health care offense, as

well as to allow courts to enjoin persons who were alienating or disposing of property or

intending to alienate or dispose of property obtained from violations such as Federal

health care offenses.  *Payment Processing Ctr., LLC*, 435 F. Supp.2d at 466; *United*

*States v. Fang*, 937 F. Supp. 1186, 1194, FN7 (D. Md. 1996); *see also* Health Insurance

Portability and Accountability Act of 1996, Pub. L. 104-191, § 247, 110 Stat. 1936, 2018

(1996).  If a person intends to alienate or dispose of property from a specified violation,

courts may restrain not only property obtained from the violation, but also property of

equivalent value.  *Id.*  The current statute reads:

(a)(1)  If a person is–

(A)  violating or about to violate this chapter or section 287, 371
(insofar as such violation involves a conspiracy to defraud the United
States or any agency thereof), or 1001 of this title; or

(B)  committing or about to commit a banking law violation (as
defined in Section 3322(d) of this title), or

©  committing or about to commit a Federal health care offense

the Attorney General may commence a civil action in any Federal court to enjoin
such violation.

(2) If a person is alienating or disposing of property, or intends to alienate or
dispose of property, obtained as a result of a banking law violation (as defined in

section 3322(d) of this title) or a Federal health care fraud offense or property which is traceable to such violation, the Attorney General may commence a civil action in any Federal court --

    (A) to enjoin such alienation of disposition of property; or

    (B) for a restraining order to --

        (i) prohibit any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent value; and

        (ii) appoint a temporary receiver to administer such restraining order.

(3) A permanent or temporary injunction or restraining order shall be granted without bond.

(b) The court shall proceed as soon as practicable to the hearing and determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought.  A proceeding under this section is governed by the Federal Rules of Civil Procedure, except that, if an indictment has been returned against the respondent, discovery is governed by the Federal Rules of Criminal Procedure.

18 U.S.C. § 1345.

    19.    Unlike a temporary restraining order (TRO) granted under FED. R. CIV. P. 65, restraining orders obtained pursuant to section 1345 are not intended to expire within a brief period of time. *See DBB, Inc.*, 180 F.3d at 1284.  By permitting the government to freeze "property of equivalent value," the statute "explicitly provides broader relief for situations where the property obtained through fraud is not easily identified." *DBB, Inc.*, 180 F.3d at 1286.  As the Eleventh Circuit noted, "given the realities and practicalities of

litigation, [a TRO that expires in 10 or 20 days] would be of dubious value to the government." *Id.*

Standards for Injunctive Relief under 18 U.S.C. § 1345

A.     Traditional factors are presumed to favor the United States.

20.     To obtain a TRO or preliminary injunction in the Fifth Circuit, a movant must demonstrate:  a) a substantial likelihood of success on the merits; b) a substantial threat of irreparable injury if the injunction is not granted; c) the threatened injury to the plaintiff must outweigh the threatened injury to the defendant; and d) the granting of the preliminary injunction must not disserve the public interest. *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).  However, where injunctive and equitable relief is authorized by statute and involves the United States in its enforcement role, the standards to be applied are different than those in a case between private litigants. *United States v. Medina*, 718 F. Supp. 928, 930 (S.D. Fla. 1989). Irreparable harm is presumed and the court's equitable powers are enhanced. *See FDIC v. Faulkner*, 991 F.2d 262, 265 (5th Cir. 1993).  This approach has been readily endorsed by courts when the United States seeks relief under section 1345. *See, e.g., United States v. Hoffman*, 560 F. Supp.2d 772, 776 (D. Minn. 2008) (threat of substantial injury to a class of persons for whose protection the government initiates the action may substitute for the irreparable harm inquiry); *United States. v. Livdahl*, 356 F. Supp.2d 1289, 1290-91 (S.D. Fla. 2005) ("[n]o specific finding of irreparable harm is necessary, no showing of

the inadequacy of other remedies at law is necessary, and no balancing of the interests of the parties is required prior to the issuance of a preliminary injunction); *United States v. Morris*, 2010 WL 4796664, at *5 (C.D. Cal. Nov. 18, 2010) (proof of irreparable harm unnecessary). As another court noted, because Congress has already declared the fraudulent activity to be harmful, "once undesirable conduct is established, it is fair to conclude that the public interest will be served if appropriate injunctive relief is granted." *Fang*, 937 F. Supp. at 1199; *see also Livdahl*, 356 F. Supp.2d at 1290-91. Courts applying these principles to injunctive proceedings under section 1345 have generally agreed. *See, e.g., Livdahl*, 356 F. Supp.2d at 1290-91; *United States v. Sriram*, 147 F. Supp. 2d 914, 937 (N.D. Ill. 2001); *United States v. Quadro Corp.*, 916 F. Supp. 613, 617 (E.D. Tex. 1996); *Fang*, 937 F. Supp. at 1199; *see also United States v. Weingold*, 844 F. Supp. 1560, 1573 (D.N.J. 1994).

     B.    <u>Provisional relief may be granted on less formal procedures.</u>

     21.    The requested injunctive and equitable relief may be granted in this case on the basis of procedures that are less formal, and evidence less complete, than ordinarily would be at trial. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (party is not required to prove his case in full at a preliminary injunction hearing). Such relief may therefore be granted in light of the limited purpose of injunction - the maintenance of the status quo. *Id.* The Fifth Circuit has recognized that in situations where the public interest is at stake, as in this case, a court's equitable powers are enhanced. *FSLIC v.*

*Dixon*, 835 F.2d 554, 558-562 (5th Cir. 1987) (upholding preliminary injunction freezing assets of officers of savings and loan without holding an evidentiary hearing). Because provisional injunctive relief is often needed under exigent circumstances, hearsay evidence is properly admitted in preliminary injunctive proceedings. *Dixon,* 835 F.2d at 558 (citing *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23 (1st Cir. 1986)); *see also Republic of Phil. v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988); *Weingold,* 844 F. Supp. at 1571. In this case, the admissions by Hague-Rogers and affidavit of Investigator Bennett are more than sufficient to grant the requested injunctive and equitable relief. *See* App. ¶¶ 1-12.

    C.    <u>Standard of proof</u>.

22.    The fraud injunction statute by its own terms permits the United States to seek relief enjoining persons who have committed fraud and/or Federal health care offenses from alienating or otherwise disposing of property either obtained from such a violation or which is traceable to such a violation. 18 U.S.C. § 1345(a)(2); *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d at 824; *Payment Processing Ctr., LLC*, 435 F. Supp.2d at 466. Once a predicate offense has been established, the statute plainly states that the government is entitled to obtain an order restraining any person from withdrawing, transferring, or dissipating such property, or property of equivalent value. *Id.* Applying various published decisions to the instant case, it is clear that the United States need not show a likelihood that it will prevail on the merits of its injunction action.

*See, e.g., United States v. William Savran & Assoc., Inc.*, 755 F. Supp. 1165, 1177 (E.D.N.Y. 1991). The United States must instead prove only that a defendant has committed, or is about to commit, a Federal health care offense, and is either disposing of or intends to dispose of property obtained as a result of that offense or property of equivalent value. *Id.* Courts interpreting section 1345 have applied various standards of proof to determine whether a defendant is committing, or is about to commit a defined offense. *See Payment Processing Ctr., LLC*, 435 F. Supp.2d at 468 (as a threshold matter the government is required establish "probable cause" that funds in question were subject to restraint under section 1345); *Savran*, 755 F. Supp. at 1177 (citing *United States v. Belden*, 714 F. Supp. 42, 45-46 (N.D.N.Y. 1987)) (probable cause standard); *United States v. Brown*, 988 F.2d 658 (6th Cir. 1993) (preponderance of the evidence); *Sriram*, 147 F. Supp.2d at 937-38 (same); *Fang*, 937 F. Supp. at 1194-96 (reasonable probability standard); *United States v. Legro,* 2008 WL 2605104, at *3 (Fifth Circuit declines to adopt standard but finds preponderance standard satisfies inquiry). Because Hague-Rogers has already admitted guilt, and is awaiting rearraignment, the Court need not choose which standard is applicable to determine if a defendant is committing or is about to commit a specified offense. To the extent the Court deems selection of one standard necessary, the United States submits, that given the clear Congressional intent through section 1345 to fashion an expedited remedy to combat fraud, the circumstances of this

case warrant adoption of the "probable cause" standard. *See Payment Processing Ctr.,*
*LLC*, 435 F. Supp.2d at 468; *Savran*, 755 F. Supp. at 1177.

23.     Several courts have adopted the probable cause standard of proof based in
part upon Congressional concern "about the possibility that innocent people would
continue to be victimized by fraudulent schemes during the often lengthy period of time
required to investigate such schemes and bring criminal charges against its perpetrators."
*See, e.g., Belden*, 714 F. Supp. at 44.  The *Belden* court reasoned, "it is unlikely that
Congress intended to hold the government to a more stringent standard than that of
probable cause when relief under 1345 was sought, since 1345 was intended to make it
easier for the government to obtain preliminary injunctions as a means of terminating
fraud schemes during the pendency of criminal investigations than had been possible
under 39 U.S.C. § 3007 [the genesis for the statute]." *Belden,* 714 F. Supp. at 45; *see also*
*Weingold*, 844 F. Supp. at 1571 (probable cause is the "controlling substantive
standard"); *Payment Processing Ctr., LLC*, 435 F. Supp.2d at 468 (relying on probable
cause standard).

24.     The *Fang* court conducted an exhaustive analysis of the proper standard to
be applied for section 1345 actions, and determined that it is "probable cause."  The court
concluded, however, that the probable cause standard really equates to the reasonable
probability standard of conventional preliminary injunction analysis. *Fang*, 937 F. Supp.
at 1196-97 ("if Congress contemplated a 'speedy' way to get at the fruits of ongoing or

likely to recur fraud, all that would seem necessary would be a strong albeit reasonable suspicion that fraud is occurring or likely to recur"). *Fang*, 937 F. Supp. at 1197. As discussed in *Fang,* the difference between a showing by "probable cause," "reasonable probability," or by a "preponderance of the evidence" that a predicate offense is being committed is largely semantic. *Id.* The United States in this case has more than satisfied either standard and thus is entitled to its requested injunctive relief.

       D.     <u>The evidence warrants issuance of the government's requested relief.</u>

       25.     "A finding of probable cause must be based on reasonably trustworthy information." *United States Postal Serv. v. Allied Treatment, Inc.*, 730 F. Supp. 738, 739 (N.D. Tex. 1990); *see also Weingold*, 844 F. Supp at 1571. "Proof by preponderance of the evidence means to prove that something is more likely than not so." *Matter of Briscoe Enterprises, Ltd. II*, 994 F.2d 1160, 1164 (5th Cir. 1993) (citing *In Re Winship,* 397 U.S. 458, 471 (1970)). Under either standard, the United States has demonstrated Hague-Rogers pleaded guilty to a predicated fraud offense, as well as committed a Federal health care offense, and will likely alienate or dispose of any property obtained as a result of his criminal offenses released by the government. App. at ¶¶ 9-12. Hague-Rogers converted funds belonging to TWBF, SETs, and investors for his own and others' personal use and enjoyment. *Id.* ¶¶ 5, 8. Such funds were obtained as a result of Hague-Rogers's criminal conduct, and that property along with any other assets belonging to Hague-Rogers, his businesses, or proceeds from the scheme to defraud, should thus be

subject to restraint and enjoinment. *Id.* Regardless of whether or not the entire amount resulting from Hague-Rogers's criminal activity is traceable to original criminal conduct relating to TWBF, the United States has made the requisite showing that it is entitled to enjoin all persons and entities from removing, transferring, or otherwise disposing of not only monies in those accounts, but also property of equivalent value. *Id.* As one court noted, "[f]raud continues as long as the underlying scheme persists. A scheme continues only as long as defendants profit. Money fuels the engine of fraud by enriching defendants." *Payment Processing Ctr., LLC*, 435 F. Supp.2d at 466. Here, all property should be restrained to afford the United States an opportunity to trace the fraudulent proceeds, as well as ensure restitution can be paid to any identifiable victims. App. ¶¶ 10-12.

26.     When a defendant amasses proceeds from their illegal activity, he often attempts to hide and/or transfer the profits outside the United States. To accomplish these goals, defendants utilize foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, shell corporations, business fronts, and professional services to acquire and conceal expensive assets purchased with fraudulent proceeds. App. ¶ 11. Due to the nature of his offenses, the United States believes Hague-Rogers, his family and/or his agents will seek to dispose of, alienate or transfer any available proceeds of his fraud and all other property at the first opportunity. The government believes this dissipation will occur because of a documented history of

repeated withdrawals and transfers of significant cash transactions belonging to SETs and

investors for his own and his family's personal use. *Id.* ¶¶ 10-12.

27.    If assets belonging to Hague-Rogers and/or his companies are not frozen

until the conclusion of this case, Hague-Rogers or his agents will very likely succeed in

alienating, transferring or otherwise disposing of property obtained as a result of the

fraudulent conduct. *Id.* Absent an Order restraining Hague-Rogers and his agents from

transferring such assets, Hague-Rogers will withdraw, dispose, alienate or transfer, likely

beyond the jurisdiction of the government, funds that should be used to satisfy any

potential criminal forfeiture, judgment, fine, costs, and order of restitution. *Id.* Without

its requested relief, no assets will be available for any such required payment. *Id.* The

United States has therefore shown that Hague-Rogers at the very least, has in the past, or

presently intends to alienate, transfer, or dissipate property traceable to his fraud and

Federal health care offenses.

28.    The United States has clearly demonstrated that Hague-Rogers has

committed and likely continues to commit numerous predicate offenses under 18 U.S.C. §

1345(a). App. ¶¶ 5, 9. Hague-Rogers's illegal conduct converted for his own and his

family's use millions of dollars in assets belonging to TWBF, SETs, and/or investors. *Id.*

¶¶ 5, 8. Under either a preponderance of the evidence or probable cause standard, Hague-

Rogers has committed offenses within the meaning of section 1345.  Because Hague-

Rogers will likely alienate or dispose of all the foregoing property, the United States is

entitled to freeze such funds, or other property of equivalent value, whether or not

traceable to Hague-Rogers's fraudulent conduct. The Court may therefore freeze all

assets related to the fraud, or property of equivalent value, without the United States'

provision of any bond. *See, e.g., DBB, Inc.*, 180 F.3d at 1286; *see also* 18 U.S.C. §

1345(b). Accordingly, the United States requests a restraining order and injunctive relief

barring Hague-Rogers, or any person or entities acting on his behalf, from disposing,

transferring, dissipating or removing the funds or property of equivalent value. All assets,

subject to release by the government, should be frozen in their entirety to ensure that such

monies - procured by fraud - do not benefit Hague-Rogers, or cannot be used for any

other purpose than satisfaction of a criminal judgment, plea agreement, or order of

restitution.[1]

29.     The appointment of a temporary receiver, while an extraordinary remedy, is

wholly necessary in this case. Given the volume of Hague-Rogers's financial dealings,

the number of SETs and investors, as well as the intertwined companies, and volume of

---

[1] Indeed, once frozen, "neither due process, nor the Sixth Amendment right to counsel requires that assets needed to pay an attorney be exempted from restraining orders or, ultimately, from forfeiture." *United States. v. Melrose East Subdivision*, 357 F.3d 493, 500 (5th Cir. 2004) (citing *United States v. Monsanto*, 491 U.S. 600, 616 (1989)). Once commission of a specified offense has been demonstrated, assets may be frozen and the status quo preserved. *Camenisch*, 451 U.S. at 395. The burden then shifts to the defendant to show that the property is not subject to forfeiture. *See Payment Processing Ctr., LLC*, 435 F. Supp.2d at 469-70; *United States v. Eighty-Eight Designated Accounts*, 786 F. Supp. 1578, 1582 (S.D. Fla. 1992). Such an approach is "sound as a matter of logic" because the information regarding Hague-Rogers' deposits and withdrawals are "peculiarly within the knowledge and control of the defendants." *Id.* Such a burden "should be properly borne by the party having the required knowledge." *Savran*, 755 F. Supp. at 1184.

*Ex Parte* **Complaint of the United States of America for Restraining Order,**
**Injunctive Relief, and Appointment of Temporary Receiver - Page 21**

bank accounts, a receiver is best suited to protect frozen assets, ensure an orderly payment of legitimate health care-related SET claims and, as appropriate, payment of restitution to victims. *See, e.g., Hoffman*, 560 F. Supp.2d at 777-78. As the *Hoffman* Court noted, due to complex financial structure of holdings, involvement of third-parties, and the possibility of legitimate business coexisting with fraudulent schemes, a neutral party is best equipped to organize and administer the companies and property at issue in this case. The receiver should have authority to administer defendants and their accounts, funds and, if necessary, implement their orderly termination. The receiver also should be permitted to collect, marshal, and administer all of the defendants' assets, including those sums owing and payable to them, process any unadjudicated claims and pay those which are found to be legitimate, identify all creditors of the entities and the amount of their claims, and take such further actions with respect to said entities which may be appropriate. The United States also is seeking permission to allow any receiver full authority and control with respect to the management or disposition of the assets of defendants, including authority over all bank accounts. The United States will submit separately to the Court the names and qualifications of any proposed receiver.

E.    *Ex parte* relief is appropriate.

30.    Granting *ex parte* the restraining order and preliminary injunction is warranted, indeed necessary, in this case. *See Hoffman*, 560 F. Supp.2d at 777-78.  The assets sought to be restrained will likely be dissipated by Hague-Rogers without *ex parte* relief. *Id.*; App. ¶¶ 10-12.  The United States seeks in this case to only enjoin and restrain the fruits of the fraud and any other property long enough so that immediately after sentencing, the resolution of any proceeding related to this case, or any appointed receiver may distribute assets to any victims.  Unless such property is frozen without prior notice, substantial amounts of money obtained by fraud could by dissipated, or transferred by Hague-Rogers beyond the reach of the United States. *Id.*

31.    Congressional intent clearly favors issuance of an *ex parte* restraining order and preliminary injunction in this case.  Courts in the Northern District of Texas have supported granting *ex parte* injunctive and equitable relief in those instances where notice would frustrate the purpose of section 1345. *See, e.g., United States v. Ekanem*; No. 3:06-CV-1328-L (N.D. Tex. Nov. 26, 2006) (order granting application for restraining order and injunction); *United States v. Saran*; No. 3:05-CV-1880-P (N.D. Tex. Sept. 22, 2005) (order granting application for restraining order and injunction); *United States v. Neal, et al.*; 3:05-CV-1751-R (N.D. Tex. Aug. 31, 2005) (order granting application for restraining order and injunction); *United States v. Hames, et al.*; No. 3:04-CV-02604-P (N.D. Tex. Dec. 7, 2004) (order granting *ex parte* application for restraining order and injunction); *United States v. Akpan*, No. 3:04-CV-0224-L (N.D. Tex. Feb. 4, 2004) (order

granting *ex parte* motion for TRO and preliminary injunction); *United States v. Ogba*, No. 3:04-CV-0225-P (N.D. Tex. Feb. 4, 2004) (order granting application for restraining order and injunction). In all such cases, notice would have only served to render fruitless further prosecution of the civil action. App. ¶¶ 11-12. Such a result is contrary to the normal role of notice and is not what Congress anticipated or intended. *See In the Matter of Vuitton Et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679 (1974) (pre-seizure notice and hearing not necessary where such procedure might frustrate the interests served by the statutes); *Little Tor Auto Ctr. v. Exxon Co. USA*, 822 F. Supp. 141, 143 (S.D.N.Y. 1993) (*ex parte* procedure allowed in connection with TRO application "where advance contact with the adversary would itself be likely to trigger irreparable injury"). The United States submits that notice of the government's attempt to restrain and enjoin assets belonging to Hague-Rogers afford him the opportunity to further dissipate or encumber assets the government seeks to freeze.

## CONCLUSION

32.     The requirements for granting injunctive relief under section 1345 are met. The United States respectfully requests that this Court grant its requested relief and enter an Order enjoining and restraining all assets and property owned by or held in the name of Hague-Rogers or his companies. The United States further requests that the Court enter an Order enjoining and restraining any person or entity from alienating or dissipating such assets or property of equivalent value until the resolution of the criminal

case or any other proceeding relating to this matter.   Finally, the government requests the

Court authorize a temporary receiver to manage any restrained property and Hague-

Rogers's businesses to preclude further fraudulent conduct.

Respectfully submitted,

JAMES T. JACKS
UNITED STATES ATTORNEY


Sean R. McKenna
Assistant United States Attorney
Texas State Bar No. 24007652
1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone:   214.659.8600
Facsimile:   214.659.8807
Email:   sean.mckenna@usdoj.gov

Attorneys for the United States of America

## CERTIFICATE OF NO CONFERENCE AND NO SERVICE

Because this matter has been filed *ex parte*, the undersigned has not spoken to defendants regarding the statements or relief requested contained herein.   The United States will serve defendants with copies of the complaint and related materials as soon as practicable after any Order issued has been served upon all applicable financial and banking institutions and the relief therein implemented.


SEAN R. MCKENNA
Assistant United States Attorney

JS 44 (TXND Rev. 2/10)

# ORIGINAL CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA,

## DEFENDANTS
ROBERT HAGUE-ROGERS,

**3-11CV0792-L**

**RECEIVED**

**APR 1 8 2011**

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

(b) County of Residence of First Listed Plaintiff   Dallas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Dallas
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Sean R. McKenna, U.S. Attorney's Office, 1100 Commerce Street,
3rd Floor, Dallas, TX 75242 (214) 659-8600

Attorneys (If Known)
Stephen Hunnicutt, The Hunnicutt Law Firm, 12720 Hillcrest Road,
Suite 750, Dallas, Texas  75230.  (214) 361-6740

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. Sec. 1345
Brief description of cause:
Injunction against fraud.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
(See instructions)
JUDGE   Lindsay
DOCKET NUMBER   3:11-CR-0038-L

DATE
04/18/2011

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____